# STATE OF MICHIGAN

# COURT OF APPEALS

MICHIGAN SPINE & BRAIN SURGEONS, PLLC,

        Plaintiff-Appellant,

v

AUTO-OWNERS INSURANCE COMPANY,

        Defendant-Appellee.

UNPUBLISHED
December 11, 2018

No. 340800
Oakland Circuit Court
LC No. 2016-152783-NF

Before: M. J. KELLY, P.J., and METER and O'BRIEN, JJ.

PER CURIAM.

Plaintiff appeals as of right an order granting summary disposition to defendant in this lawsuit for personal injury protection benefits under the no-fault act, MCL 500.3101 *et seq*. Plaintiff also contests the trial court's order denying its motion for reconsideration. We affirm.

## I. TIMELINE

This matter arose from the filing of a complaint by plaintiff on May 3, 2016, seeking payment for medical services provided to Willie McGee for injuries McGee incurred in an automobile accident, while McGee was insured with defendant. The following dates are important and undisputed regarding the timeframe of events pertinent to the litigation:

First assignment executed to plaintiff --------------------October 31, 2014

McGee's motor vehicle accident----------------------November 21, 2014

Second assignment executed to plaintiff------------------March 25, 2016

McGee's surgery with plaintiff----------------------------March 28, 2016

Plaintiff's initial complaint filed----------------------------- May 3, 2016

Third assignment executed to plaintiff-------------------- May 12, 2017

Plaintiff's amended complaint filed-------------------------June 5, 2017

-1-

## II. SUMMARY DISPOSITION – ONE-YEAR BACK RULE

Plaintiff contests the applicability of the one-year-back rule to the assignments of the insurance claim that is the subject of this litigation. It further denies the enforceability of any restriction on assignment of the benefits in defendant's insurance policy with McGee. Plaintiff contends that the three assignments executed by McGee in favor of plaintiff were not for future benefits and did not run contrary to the rulings in *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191; 895 NW2d 490 (2017), and it challenges defendant's contention that plaintiff lacked standing at the time of the filing of its complaint. Further, plaintiff argues that defendant lacks standing to challenge the assignments because it was not a party to the assignments.

Although the trial court stated that it granted summary disposition under MCR 2.116(C)(8), because the trial court considered material outside of the pleadings, we evaluate the motion in accordance with MCR 2.116(C)(10).

> A motion for summary disposition brought pursuant to MCR 2.116(C)(10) tests the factual support for a claim. Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A motion pursuant to MCR 2.116(C)(10) is reviewed by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. It is well settled that the circuit court may not weigh the evidence or make determinations of credibility when deciding a motion for summary disposition. Moreover, a court may not make findings of fact; if the evidence before it is conflicting, summary disposition is improper. [*Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018) (citations, quotation marks, emphasis, and brackets removed).]

In addition, "[t]he interpretation of contractual language, as well as the determination of whether that contractual language is ambiguous, is a question of law that we review de novo." *Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 445; 886 NW2d 445 (2015) (citations and quotation marks omitted).

This case is subject to the Michigan Supreme Court's decision in *Covenant*, wherein the Court stated:

> [A] review of the plain language of the no-fault act reveals no support for plaintiff's argument that a healthcare provider possesses a statutory cause of action against a no-fault insurer. This conclusion does not mean that a healthcare provider is without recourse; a provider that furnishes healthcare services to a person for injuries sustained in a motor vehicle accident may seek payment from the injured person for the provider's reasonable charges. However, a provider simply has no statutory cause of action of its own to directly sue a no-fault insurer. [*Covenant*, 500 Mich at 217-218.]

The Court additionally stated:

> [O]ur conclusion today is not intended to alter an insured's ability to assign his or her right to past or presently due benefits to a healthcare provider. See MCL 500.3143; *Professional Rehab Assoc v State Farm Mut Auto Ins Co*, 228 Mich App 167, 172; 577 NW2d 909 (1998) (noting that only the assignment of future benefits is prohibited by MCL 500.3143). [*Covenant*, 500 Mich at 217 n 40.]

Despite plaintiff's various contentions regarding the assignments of October 31, 2014, and March 25, 2016, it is not legitimately disputable that the assignments are invalid under *Covenant* because they contemplate an assignment for services from plaintiff that were not rendered until March 28, 2016, thereby comprising a preclusive future assignment of benefits. This is consistent with the proscription of MCL 500.3143 that "[a]n agreement for assignment of a right to benefits payable in the future is void." In contrast, the third assignment executed May 12, 2017, is arguably valid, at least on its face, because it encompasses past services or benefits rendered, having come into existence after McGee's surgery provided by plaintiff on March 28, 2016.

Defendant argued that the assignments were invalid because McGee failed to obtain defendant's written consent for the assignments to plaintiff, as required in the policy of insurance. Insurance policies are construed as contracts and "subject to the same contract construction principles that apply to any other species of contract." *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005), implied overruling on other grounds recognized in *W A Foote Mem Hosp v Michigan Assigned Claims Plan*, 321 Mich App 159, 183-184; 909 NW2d 38 (2017). "In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Rory*, 473 Mich at 464. "[U]nambiguous contracts are not open to judicial construction and must be enforced as written." *Id*. at 468 (emphasis omitted). "[T]he judiciary is without authority to modify unambiguous contracts or rebalance the contractual equities struck by the contracting parties. . . ." *Id*. at 461. "[C]ourts are to enforce the agreement as written absent some highly unusual circumstance *such as a contract in violation of law or public policy*." *Id*. at 469 (quotation marks and citation omitted; emphasis added).

"Under general contract law, rights can be assigned unless the assignment is clearly restricted." *Burkhardt v Bailey*, 260 Mich App 636, 653; 680 NW2d 453 (2004). Here, McGee's insurance policy with defendant is clear and unambiguous in stating that "[y]our rights and duties under this policy may not be assigned without our written consent." As argued by plaintiff, however, courts have refused to enforce an anti-assignment clause when the loss at issue occurs before the assignment is executed. Specifically, in *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, ___; ___ NW2d ___ (2018); quoting *Roger Williams Ins Co v Carrington*, 43 Mich 252, 254; 5 NW 303 (1880), the Court stated:

> "The assignment having been made after the loss did not require consent of the company. The provision of the policy forfeiting it for an assignment without the company's consent is invalid, so far as it applies to the transfer of an accrued cause of action. It is the absolute right of every person—secured in this

state by statute—to assign such claims, and such a right cannot be thus prevented. It cannot concern the debtor, and it is against public policy."

See also *Century Indemnity Co v Aero-Motive Co*, 318 F Supp 2d 530, 539-540 (WD Mich, 2003) (referencing, in part, *Roger Williams* in explaining that "an anti-assignment clause will not be enforced where a loss occurs before the assignment, because in that situation the assignment of the claim under the policy is viewed no differently than any other assignment of an accrued cause of action."). As such, defendant's contention that the May 12, 2017, assignment is void based on the anti-assignment language of the insurance policy lacks merit.

The validity of the May 12, 2017, assignment, however, is still subject to further scrutiny in conjunction with the one-year-back rule of MCL 500.3145(1), which states, in relevant part:

> An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivor's loss has been incurred. However, *the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.* [Emphasis added.]

"The one-year-back rule is designed to limit the amount of benefits recoverable under the no-fault act to those losses occurring no more than one year before an action is brought." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 203; 815 NW2d 412 (2012).

Plaintiff initiated this action on May 3, 2016, amending its complaint on June 5, 2017. The case was initiated as a direct lawsuit by plaintiff against defendant before the Supreme Court's ruling in *Covenant* was issued on May 25, 2017, with amendment of the complaint occurring after *Covenant* was issued, in an attempt to comport with that ruling. Plaintiff's relevant assignment was executed on May 12, 2017, and the surgery for which plaintiff asserts a right to payment occurred on March 28, 2016.

It is routinely recognized that "[a]n assignee stands in the position of the assignor, possessing the same rights and being subject to the same defenses." *Burkhardt*, 260 Mich App at 653. As such, plaintiff is afforded only the same rights, not greater rights, than McGee would have possessed on the date of the assignment. See *Jawad A Shah, MD, PC*, 324 Mich App at ___. Had McGee initiated an action against defendant on May 12, 2017, he would have been precluded from recovering any benefits for the part of the loss incurred more than one year before May 12, 2017. See *id*. at ___. "[T]he procurement of the assignment[] was an event that occurred after the filing of the original complaint and provided the only means by which plaintiff[] could have standing to maintain a direct action against defendant insurer for recovery of no-fault benefits in this case." *Id*. at ___, citing *Covenant*, 500 Mich at 195-196, 217 n 40.

This Court in *Jawad A Shah, MD, PC*, 324 Mich App at ___, indicated, under similar circumstances, that a plaintiff's later attempt to amend its complaint "to account for the assignment-of-rights theory," as done here in early June of 2017, comprises a supplemental pleading under MCR 2.118(E) and not an amended pleading in accordance with MCR 2.118(D). This distinction is significant because a supplemental pleading "could not relate back to the date of the original pleading." *Jawad A Shah, MD, PC*, ___ Mich App at ___. Specifically:

> Through the assignment, plaintiff[] only obtained the rights [the insured] actually held at the time of the execution of the assignment, and plaintiff[] cannot rely on the relation-back doctrine to essentially gain the potential for a greater right to recovery than [it] actually received. [*Id*. at ___.]

Hence, this Court concluded:

> [T]hrough the assignment[] in this case, plaintiff[] did not obtain the right to pursue no-fault benefits for any portion of the loss incurred more than one year before [the date of the assignment], because that is the pertinent point of reference for purposes of the one-year-back rule. A supplemental pleading predicated on the [assignment] could not relate back to the date of the original pleading. [*Id*. at ___.]

Plaintiff also makes an argument regarding its alleged status, by way of the May 2017 assignment, as McGee's attorney-in-fact. Plaintiff suggests that as McGee's attorney-in-fact it was entitled to proceed on McGee's behalf because it stood in the shoes of McGee. However, McGee could not have pursued, under the one-year-back rule, the benefits to which plaintiff asserts entitlement. Plaintiff's alleged status as McGee's attorney-in-fact does not alter the fact that the only rights it could pursue were those which McGee had, which in this instance involved payments only for the timeframe encompassed by the one-year-back rule.

Plaintiff further suggests that defendant lacked standing to oppose the assignments because defendant was not a party to those documents. As stated by the Michigan Supreme Court in *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010):

> [A] litigant has standing whenever there is a legal cause of action. Further, whenever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment. Where a cause of action is not provided at law, then a court should, in its discretion, determine whether a litigant has standing. A litigant may have standing in this context if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant.

It is disingenuous, at best, for plaintiff to contest defendant's standing to challenge the assignments executed between McGee and plaintiff, when the broader context of the case pertains to defendant's insurance policy with McGee and McGee's assignment of his rights under that policy. Because defendant, as the insurer, has a "substantial interest" in whether it

will be liable to plaintiff under its policy of insurance, including the anti-assignment provision within that policy, it has standing to challenge plaintiff's claims.

We note that plaintiff also argues for the applicability of MCL 440.9408, which deems ineffective "[r]estrictions on assignment of promissory notes, health-care-insurance receivables, and certain general intangibles." Plaintiff asserts that this statutory provision bolsters its claim that the failure to obtain defendant's consent for the assignment of benefits in McGee's insurance policy is immaterial to the validity of the assignment. First, it is unnecessary to address this argument based on the determination that the third assignment, on May 12, 2017, was not precluded by the anti-assignment language in the insurance policy. Second, because this case pertains to a no-fault action, "the more specific statute controls." See *Mich Deferred Presentment Servs Ass'n v Comm'r of Office of Fin & Ins Regulation*, 287 Mich App 326, 334; 788 NW2d 842 (2010). Thus, the restrictions imposed by the no-fault act, such as MCL 500.3143 (stating that the "assignment of a right to benefits payable in the future is void") take precedence over general commercial provisions.

### III. MOTION FOR RECONSIDERATION

Plaintiff argues that the trial court erred by denying its motion for reconsideration, premised on allegations that defendant did not reveal that McGee's no-fault case, pending in a different court, had concluded and asserting that defendant had agreed to indemnify McGee against plaintiff.

This Court reviews "a trial court's decision on a motion for reconsideration for an abuse of discretion. An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Frankenmuth Ins Co v Poll*, 311 Mich App 442, 445; 875 NW2d 250 (2015) (citations and quotation marks omitted).

We find no basis for relief. First, the transcript of the hearing on the motion for summary disposition reveals that plaintiff had information regarding McGee's case but elected not to intervene in that proceeding. Thus, it appears incongruous for plaintiff to now claim that it was somehow blindsided by defendant, given the acknowledged availability of information regarding McGee's case and its status in another court. Additionally, in its appellate brief, plaintiff offers no citation to legal authority in support of its contention of error, i.e., that the alleged "concealment" with regard to the other case mandates appellate relief. It is not sufficient for a party to "simply . . . announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claim, or unravel and elaborate for him his arguments and then search for authority either to sustain or reject his position." *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) (citation and quotation marks omitted). Finally, MCR 2.119(F)(3) states:

> Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error.

Based on this court rule, it was incumbent upon plaintiff, to succeed on its motion for reconsideration, to demonstrate that the trial court made a "palpable error" and that a "different disposition . . . must result from correction of the error." Even if the trial court had been made aware, in greater or more accurate detail, regarding the status of McGee's separate lawsuit, it would not have affected the trial court's ruling in this matter, which was premised on the validity of the assignment to plaintiff and the one-year-back rule.

## IV. PARTIAL ASSIGNMENT

Plaintiff contends the trial court erred because it "appeared to partially rely on [defendant's] argument that a partial assignment or claim-splitting, is impermissible." Plaintiff asserts that its bill did not comprise a partial assignment because "the entire bill for this provider was assigned."

However, the trial court's ruling was premised on the one-year-back rule and not on a partial assignment. Accordingly, plaintiff's contention of error is simply misplaced.

## V. THIRD-PARTY BENEFICIARY

Plaintiff asserts that the trial court erred by determining that plaintiff's status was that of an incidental beneficiary and not a third-party beneficiary.

This Court discussed third-party beneficiaries in *Schmalfeldt v North Pointe Ins Co*, 252 Mich App 556, 562; 652 NW2d 683 (2002), aff'd on other grounds 469 Mich 422 (2003), stating:

> In Michigan, third-party beneficiary status is defined by MCL 600.1405, which states, in part:
>
>> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.
>>
>> (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.
>
> An objective standard is used to determine a plaintiff's status. The law presumes that a contract has been executed for the benefit of the contracting parties, and the mere fact that a third person would incidentally benefit does not give the third person a right to sue for the breach of contract. [Citations omitted.]

Specifically:

> A person is a third-party beneficiary of a contract only when that contract establishes that a promisor has undertaken a promise directly to or for that person.

By using the modifier directly, the Legislature intended to assure that contracting parties are clearly aware that the scope of their contractual undertakings encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract. [*Schmalfeldt v North Pointe Ins Co*, 469 Mich 422, 428; 670 NW2d 651 (2003) (citations omitted).]

In contrast, an "incidental beneficiary" is defined as "[a] third-party beneficiary who, though benefiting indirectly, is not intended to benefit from a contract and thus does not acquire rights under the contract." *Black's Law Dictionary* (10th ed).

In *Covenant*, 500 Mich at 217 n 39, the Supreme Court "decline[d] to make . . . a blanket assertion" that "healthcare providers are incidental rather than intended beneficiaries of a contract between the insured and the insurer," asserting that such a "determination rests on the specific terms of the contract between the relevant parties." "A third-party beneficiary may be a member of a class, but the class must be sufficiently described." *Shay v Aldrich*, 487 Mich 648, 663; 790 NW2d 629 (2010) (citation and quotation marks omitted).

Because plaintiff has failed to identify or assert the existence of any language within the insurance policy between McGee and defendant that either refers to plaintiff directly or to a class of which plaintiff is identifiable as a member, it has failed to demonstrate that an issue of fact existed regarding its status as a third-party or intended beneficiary of the no-fault policy.

Affirmed.


/s/ Michael J. Kelly
/s/ Patrick M. Meter
/s/ Colleen A. O'Brien